IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 3:19-CR-220-TAV-DCP-3 |
| LAMARCUS ANDERSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Anderson's Motion to Release Defendant Pending Trial and for a Detention Hearing [Doc. 171], filed on April 8, 2020. Defendant requests release prior to trial, arguing that there are conditions in place that would reasonably assure his appearance and the safety of the community, particularly in light of the potential exposure to the COVID-19 virus stemming from his detention.

The Court held a detention hearing via video conference on April 27, 2020.[1] Attorney Donny Young appeared on behalf of Defendant, while Assistant United States Attorney Cynthia Davidson appeared on behalf of the Government. Attorney Young and Defendant appeared via videoconference.

---

[1] Defendant filed a consent to appear by video conference on April 8, 2020. [Doc. 172].

In consideration of releasing Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments presented at the detention hearing, as well as the Pretrial Services Report ("PSR"), establish by clear and convincing evidence that Defendant is a danger to the community, as well as by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. Additionally, the undersigned finds that Defendant has failed to show a specific threat of serious complications from contracting COVID-19. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

## I. ANALYSIS

Defendant is charged [Doc. 23] with conspiracy to possess with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), as well as conspiracy to distribute one hundred (100) kilograms or more of a substance containing marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Defendant signed a waiver of a detention hearing on February 6, 2020 [Doc. 58], and the Court subsequently entered an Order of Detention [Doc. 61].

Defendant now moves [Doc. 171] for release, arguing that there are adequate conditions that may be put in place to ensure his appearance at trial and the safety of the community. Defendant proposes that his aunt, Marva Anderson, would be willing to serve as a third-party custodian and that he would be willing accept standard conditions as set forth by the Court. Lastly, Defendant asserts that he is currently detained at the Blount County Jail and "[t]o expose him to the risk of contracting [the COVID-19] virus is unnecessary." [*Id.* at 3].

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of

any other person and the community[.]" 18 U.S.C § 3142(g).  In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against Defendant, (3) Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release."  18 U.S.C § 3142(g)(1)-(4).

Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody."  *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download.  The Court will first address the respective section 3142(g) factors and then analyze Defendant's specific arguments related to the COVID-19 virus.

A. **Section 3142(g) Factors**

First, the Court finds that the nature and circumstances of the offense charged argues in favor of detention.  18 U.S.C. § 3142(g)(1).  As the Court previously detailed, Defendant is charged [Doc. 23] with conspiracy to possess with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), as well as conspiracy to distribute one hundred (100) kilograms or more of a substance containing marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  Defendant's charges create a rebuttable presumption that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

3

At the hearing, the Government presented the testimony of FBI Task Force Officer Kris Mynatt, who stated that he investigated Defendant as the co-lead agent in a drug trafficking conspiracy. Officer Mynatt stated that in the course of investigating a drug enterprise involving the Gangster Disciples, he listened to intercepted Title III wiretaps involving Defendant and Codefendant Cornelius, that Defendant was a subordinate of Codefendant Cornelius, and that Defendant was selling marijuana and methamphetamine from his residence at 2834 Jefferson Avenue at Codefendant Cornelius' direction. Additionally, Officer Mynatt testified that a narcotic believed to be heroin, two firearms, and digital scales were found after the execution of a search warrant at Defendant's residence.

Second, the weight of the evidence of Defendant's dangerousness argues in favor of detention. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Further, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6. Therefore, the Court finds that this factor weighs in favor of detention.

Next, the Court must consider a host of factors in regard to the history and characteristics of Defendant, which factors the Court also finds weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A). Here, the Court notes that Defendant has long-standing ties to this District and he proposes that he would live with his aunt, Ms. Anderson, if released. However, the PSR notes that an unobserved drug screen was conducted prior to Defendant's Initial Appearance on February 6, 2020, the probation officer was immediately suspicious of the provided specimen because of a noticeable lack of heat and the temperature strip indicated that no temperature was registered, and

4

this lack of temperature is not consistent with a pure specimen. The PSR states that Defendant subsequently denied tampering with the specimen and expressed that he wished to sign a drug use admission form instead of sending a specimen to a lab for confirmation. Defendant acknowledged that he had used marijuana and cocaine on February 5, 2020, and the PSR details that his state probation supervision records reflect that he tested positive for marijuana on August 27, 2014, April 9, 2015, January 14, 2016, and January 17, 2017.

As part of this analysis, the Court considers Defendant's criminal history, including both actual convictions and mere arrests or charges to assess Defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). The PSR details Defendant's arrest for possession of marijuana and drug paraphernalia charges in the Jackson County Circuit Court in Scottsboro, Alabama on May 28, 2013. After Defendant was released on bond, an alias warrant was issued on October 16, 2015, the PSR notes two failures to appear for his arraignment on November 4, 2015 and January 12, 2016, and an alias warrant was served on February 12, 2016. Defendant was convicted on February 16, 2016 and received a suspended sentence of twelve months custody with twenty-four months of unsupervised probation. A violation of probation warrant was issued on March 21, 2016, for the "Failure to Report to Court Referral," although Defendant's probation was not revoked and he was re-sentenced to twenty-four months of probation on May 9, 2017. Defendant was also convicted of third-degree robbery in the Madison County Circuit Court in Huntsville, Alabama on December 8, 2013. Defendant pled guilty and received a suspended sentence of five years custody, with three years' probation. Defendant was also charged with being a fugitive from justice in the Loudon County General Sessions Court on March 10, 2017.

In the overall analysis, the Court also notes that Attorney General Barr detailed that "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. Here, the Court relies upon its subsequent analysis of the specific arguments under COVID-19 in the following section. While the Court acknowledges the general risk of exposure to the COVID-19 virus while detained, Defendant has failed to set forth a specific risk of exposure or that the measures in place during his detention are insufficient to mitigate any such risk.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (stating "[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")). Further, the Court notes Defendant's multiple violations of his state probation, including four positive tests for marijuana, as well as two failures to appear. The United States Probation Office has recommended that Defendant be detained largely due to Defendant's criminal history, risk of flight, prior probation violations, and belief that Defendant tampered with his drug screen to falsify the results. Accordingly, the Court finds that there are no conditions sufficient to address the concern for danger that Defendant poses to the community or serious risk of flight.

6

Case 3:19-cr-00220-TAV-DCP   Document 185   Filed 04/30/20   Page 6 of 12   PageID #: 460

### B. Effect of COVID-19

Defendant also points to the risk of contracting the COVID-19 virus while detained, as well as the directive of the Tennessee Supreme Court to reduce non-violent offenders. As the Court previously detailed in *United States v. Haun*, No. 3:20-cr-24-4 (E.D. Tenn. Apr. 10, 2020) [Doc. 31], the Court will adopt the reasoning of the Eastern District of Michigan and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020)). Although the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), the Eastern District of Michigan found that "[a]lthough these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i)[2], they are nevertheless relevant under the present procedural posture." *Id.* (addressing where the defendant originally consented to detention before seeking pretrial release).

Defendant is currently detained at the Blount County Jail. The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of

---

[2] Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

7

transmission, given the conditions frequently present in correctional and detention facilities." *Pruitt*, 2020 WL 1698661, at *6 (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Clark*, 2020 WL 1446895 at *3. Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 ("While the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

First, as discussed above, the § 3142(g) factors demonstrate that Defendant presents a danger to the community and a risk of flight, and that no condition or combination of conditions would reasonably assure the safety of the community and his appearance in court. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers Defendant's specific COVID-19 concerns. While the Court acknowledges the general concerns regarding the spread of the COVID-19 virus at the detention facility, Defendant has only presented generalized concerns about the risk of the impact the COVID-19 virus may have on him if he continues to be detained. The PSR notes that Defendant advised that he has no known medical conditions and is not prescribed any medication. Therefore,

8

this factor does not support Defendant's release. *See United States v. Bell*, No. 17-CR-20183-1, 2020 WL 1650330, at *6 (E.D. Mich. Apr. 3, 2020) ("Second, Bell's concerns are generalized and speculative. Bell has identified no personal health condition rendering him at greater risk of either contracting COVID-19 or developing severe complications from the virus."); *see also United States v. Munguia*, No. 3:19-cr-191-B, 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee.").

However, the Court also considers the measures in place to mitigate exposure to the virus in place at the Blount County Jail. The Government responded [Doc. 182] in opposition to Defendant's motion, stating that as of April 22, 2020, neither Defendant nor any other detainee at the Blount County Jail had been diagnosed with COVID-19. At the detention hearing, the Government confirmed that there were no active COVID-19 cases at the Blount County Jail. Further, the Government detailed [Doc. 183] the procedures in place at the detention facility to ensure the safety of the inmate population, staff, and visitors. First, all inmates' temperatures are being taken upon being brought to the detention facility, with additional measures in place, for all individuals brought by any agency or turning themselves in. Additional COVID-19 screening questions are also in place before any incoming inmates enter the building. All new inmates are placed in respective male and female C-Pods for a minimum period of 14 days and will be served meals on Styrofoam trays. All individuals will have their temperature taken prior to entry into the secured side of the building, all outside volunteers will no longer be allowed into the building, and there will only be a limited number of operational video visitation kiosk in the library. Temperature checks will be conducted on all incarcerated inmates twice a week, the entire

9

Case 3:19-cr-00220-TAV-DCP   Document 185   Filed 04/30/20   Page 9 of 12   PageID #: 463

detention facility is sanitized twice a week with Electrostatic Clorox cleaning equipment, and inmates are given cleaning supplies a minimum of three times a week. Lastly, there will be no inmate movement outside the detention facility other than for Federal Court transports and life sustaining doctor appointments, correction deputies will now work a 32 hour work week, and if there is a positive test result for COVID-19, the inmate will be transported to the University of Tennessee Hospital for treatment.

Defendant has failed to point to any confirmed cases of the COVID-19 virus at the Blount County Jail, or that any additional measures in place are not sufficient. Finally, the Court finds no evidence that the detention facility could not provide Defendant with adequate medical care or transport him to a hospital, if he became seriously ill. *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *6 (D. Kan. Mar. 25, 2020). "The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). Defendant has only put forth a generalized risk of contracting the COVID-19 virus and has failed to demonstrate how the measures in place at the detention facility are insufficient.

Next, the Court reviews whether the proposed conditions of release are tailored to mitigate or exacerbate other COVID-19 risks to Defendant. Even if Defendant was confined to house arrest, he does not "identify any COVID-19 precautions being implemented there." *Pruitt*, 2020 WL 1698661 at *7 (citing *Smoot*, 2020 WL 1501810, at *3). Therefore, the Court finds that this factor does not weigh in favor of detention or release.

Lastly, Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place

orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7. Here, the Court has already detailed that Defendant poses a risk of flight, as well as a danger to the community. Defendant also has a previous history of failing to abide by conditions of probation; therefore, the Court cannot ensure that he would abide by the current conditions of release. *See Pruitt*, 2020 WL 1698661 at *7 ("Pruitt's history of probation violation and nonappearance renders these concerns all the more troubling."); *Smoot*, 2020 WL 1501810 at *3 ("Most importantly, however, Defendant's extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'") (quoting *Clark*, 2020 WL 1446895 at *7). The Court also notes the enhanced personal risk to the probation officers assigned to supervise Defendant, in connection with his previous history of non-compliance. *See, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). Lastly, Defendant's release and potential non-compliance "may increase the risk of infection to the family members with whom he would reside." *United States v. Bell*, No. 17-CR-20183-1, 2020 WL 1650330, at *7 (E.D. Mich. Apr. 3, 2020). Therefore, this factor also weighs in favor of Defendant's continued detention.

## II. CONCLUSION

Ultimately, an examination of specific factors related to Defendant's individualized risk of contracting the COVID-19 virus does not establish that Defendant's pretrial release is warranted. Further, the Government has proven by clear and convincing evidence that Defendant presents a danger to the community and by a preponderance of the evidence that he is a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community

and his appearance in court.  Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

    **IT IS SO ORDERED.**

                          ENTER:

                          _/s/ Debra C. Poplin_
                          Debra C. Poplin
                          United States Magistrate Judge